78 F.3d 586
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Bobby Ray LONG, Jr., Petitioner-Appellant,
v.
Craig HANKS, Respondent-Appellee.
 No. 95-2594.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 29, 1996.*
Decided March 4, 1996.
 
 Before POSNER, Chief Judge, and MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Long appeals the denial of his petition for habeas corpus. Long is an inmate in the Indiana prison system. In his petition, he claimed that the Conduct Adjustment Board ("CAB") sanctioned him for violating prison regulations without affording him constitutionally mandated procedures, thus depriving him of liberty without due process in violation of the 14th Amendment. In his petition to the district court, Long claimed that the CAB violated his rights on ten occasions. On appeal, however, he only presses claims with respect to seven occasions, conceding that he procedurally defaulted on the other three claims.
 
 
 2
 The seven cases stem from occurrences in which prison personnel claimed that Long had violated prison regulations. In all but one case, the penalties that the CAB imposed upon Long included reducing his earned credit time and changing his credit class. Both earned credit time and credit class affect the length of a prisoner's sentence. (Appellee Brief at 22.) The appellee concedes that these sanctions created an atypical and significant hardship on Long in relation to the ordinary incidents of prison life. (Appellee Brief at 21); see Sandin v. Conner, 115 S.Ct. 2293, 2300 (1995). Therefore, there is no dispute that the sanctions imposed on Long implicated a liberty interest, in all but one instance. As such, whether Long can prevail in this case turns upon whether the CAB provided the constitutionally mandated procedures before punishing him.
 
 
 3
 Long's petition for habeas corpus made three claims as to why the procedures that the CAB employed did not meet constitutional requirements. First, he claimed that the CAB was not impartial. In support of this claim Long makes three subsidiary claims: that the CAB used "boilerplate language" in its written findings; that, in one case, the CAB found him guilty of an offense different from the one with which he was charged; and, in one case, that the CAB held that Long had threatened a guard when, according to Long, it was another prisoner that he had threatened. Second, Long claimed that in three of the cases the CAB denied Long the opportunity to present witnesses or procure witnesses' statements. Third, Long claimed that he was innocent of the charges against him.
 
 
 4
 The district court rejected each of Long's claims. First, it held that Long had presented nothing to indicate that the board was not impartial. The court stated that the allegations that Long made in this regard, even if true, had nothing to do with the issue of impartiality. (R. 10 at 2-3.) Second, the court held although that the right of prisoners to call witnesses in disciplinary hearings is significant, Forbes v. Trigg, 976 F.2d 308 (7th Cir.1992), cert. denied, 113 S.Ct. 1362 (1993), that there are limits on this right. The court held that a prisoner only has the right to call witnesses who will offer exculpatory information, and that prison officials have discretion to put reasonable bounds upon disciplinary proceedings. (R. 10 at 3.) Because Long had virtually admitted that he engaged in the alleged violations, he could not identify what exculpatory information the witnesses would provide. Moreover, he could not identify the individuals he wished to call as witnesses. Therefore, the district court concluded that the CAB did not deny Long due process in reaching its decision without the testimony of the witnesses that Long wished to present. (R. 10 at 3.) Third, the district court construed Long's claim of innocence as a challenge to the sufficiency of the evidence, under the standard of Superintendent v. Hill, 472 U.S. 445 (1985). The court held that he did not have a valid due process claim upon this basis either. It found that his only argument on this point was that the board did not accept his version of the events. The court held that such did not amount to a due process violation because the Due Process Clause only requires that the decision of a conduct board be supported by "some evidence." Hill, 472 U.S. at 455. As such, the CAB was not required to accept his version of the events so long as there was some evidence supporting its conclusion. Moreover, the court held that a federal court reviewing a petition for habeas corpus will not outweigh the evidence considered by the state tribunal. (R. 10 at 3.)
 
 
 5
 On appeal, Long reiterates his claims that the CAB violated his right to due process because it was not impartial and because it limited his right to call witnesses. In making these arguments, he does not discuss the district court's reasoning in addressing these arguments or attempt to demonstrate that its conclusions were faulty. Long attempts to buttress his claim regarding impartiality, although cryptically, by claiming that Indiana law gave him a liberty interest in having an impartial decision-maker. (Appellant Brief at 16.) Finally, he claims that the district court erred in not construing his petition to encompass a claim that the CAB's written statements were inadequate. Long concedes that he did not raise this contention in his petition for habeas corpus. He argues, however, that because he raised this issue in his response to respondent's return to show cause, the district court, which is under a duty to construe a pro se litigant's pleadings liberally, should have addressed this issue.
 
 
 6
 Long's claim that the CAB was not impartial has no merit. Before officials deprive a prisoner of a liberty interest, they must provide a hearing before a neutral and detached decisionmaker. Redding v. Fairman, 717 F.2d 1105, 1112 (7th Cir.1983), cert. denied, 465 U.S. 1025 (1984). Long's argument is that the CAB was not impartial because it used boilerplate language in its written findings of fact and conclusions. (Appellant Brief at 13-16.) He claims that his argument is bolstered by the fact that in one of the cases the CAB relied upon Long's admission that he threatened another inmate to support a claim that he had threatened a guard. Long claims that with respect to another charge, the fact that the committee found him guilty of a lesser violation than that with which he was charged, indicates bias. As the district court correctly pointed out, these claims do not put into question the impartiality of the CAB. (R. 10 at 3.) Thus, we reject Long's claim that the CAB was not impartial.
 
 
 7
 Long's argument regarding the CAB's denial of his right to call witnesses involves three of the cases. In one of these cases, (RDC 94-05-0014), the sanctions imposed, 60 days disciplinary segregation and 30 days loss of phone and recreation privileges, did not implicate any liberty interest. Sandin, 115 S.Ct. at 2300. In the other two cases, (RDC 94-05-0015 and RDC 94-05-0016), it is apparent from the record that nothing any witnesses would say could help Long's case.
 
 
 8
 In RDC 94-05-0015, the CAB found Long guilty of violating Adult Disciplinary Policy Procedures Code ("ADPP") 213, "threatening." The conduct report charged that Long threatened a correctional officer. Long's defense at the CAB hearing was that he did not threaten a correctional officer, but rather threatened another inmate. (R. 7, Exhibit B3.) Because the provision that Long was charged with violating prohibits threatening anyone, even if a witness supported Long version of the events, the outcome of his case would be the same. Moreover, the CAB's findings indicate, albeit with some lack of clarity, that they found him guilty of threatening another offender rather than threatening a guard. Long admitted to doing this. Therefore, it is clear that even if Long had been allowed to call witnesses, they could not have helped him in case 94-05-0015.
 
 
 9
 Witnesses would similarly be of no use to Long with respect to RDC 94-05-0014. In that case the conduct report charged Long with insolence, vulgarity, and profanity to staff. At the CAB hearing Long claimed that he made statements different than those with which he was charged with uttering. However, there is no material difference in the degree of vulgarity, profanity, and insolence between the statements Long was charged with uttering and those he admitted to uttering. As such, testimony by any additional witnesses would be irrelevant.
 
 
 10
 While prisoners have a fundamental right to call witnesses in disciplinary hearings, Redding, 717 F.2d at 1114 (citing Wolff, 418 U.S. at 566), the Due Process Clause does not give them an unrestricted right to call witnesses in all cases. See Wolff, 418 U.S. at 566 ("[T]he unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators."). It is true that in the present case neither the respondent or the CAB have identified any specific institutional goals that would be undermined by allowing Long to call witnesses. See Forbes, 976 F.2d at 308 (holding that Wolff requires a case by case analysis by the prison before denying the right to call witnesses). In the present case, however, where Long could not identify the witnesses he wished to call, and where it was apparent from the record that additional witnesses could not help Long's case (a fact which he does not dispute on appeal), the CAB's refusal to allow a continuance so that Long could obtain either the presence or statements of witnesses did not violate his due process rights. Forbes, 976 F.2d at 318.
 
 
 11
 In his appeal, Long does not reassert his claim of innocence, which the district court construed as a claim that there was insufficient evidence to support the CAB's findings. Moreover, he does not claim that the district court erred in ruling that there was sufficient evidence to support the CAB's conclusions. What Long does argue is that the district court erred in not construing his petition to contain a claim that the CAB made constitutionally inadequate written findings. It is not disputed that the district court did not broach this issue. Respondent argues that because Long did not raise this argument in his petition, he has waived it. Mills v. Jordon, 979 F.2d 1277, 1279 (7th Cir.1992). Long admits that he did not spell out this argument in his petition and only raised it in his response brief in the district court. He argues, however, that because he is a pro se litigant, that this court should construe his pleadings liberally and therefore address the merits of this issue. Haines v. Kerner, 404 U.S. 519, 520 (1972).
 
 
 12
 Even if we give Long the benefit of the doubt by construing his original petition to include a claim of insufficient written findings, we would find against him on the merits. Although the written findings are brief, they are not constitutionally inadequate. In some situations a report that merely states that the committee's decision is based upon the conduct report will not satisfy due process requirements. See, e.g., Chavis v. Rowe, F.2d 1281, 1286-87 (7th Cir.), cert. denied, 454 U.S. 907 (1977); Hayes v. Walker, 555 F.2d 625, 633 (7th Cir.), cert. denied, 434 U.S. 959 (1977). Where, however, the charge and evidence against an inmate are straightforward, a brief statement that the committee believed the conduct report will satisfy constitutional requirements. Saenz v. Young, 811 F.2d 1172, 1174 (7th Cir.1987). A committee statement has no intrinsic value. It serves the purpose of "protect[ing] the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding." Wolff, 418 U.S. at 565. In addition, a written statement "helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts ... will act fairly." Id. In other words, the written statement protects prisoners from being disciplined for things they have not actually done. Saenz, 811 F.2d at 1174.
 
 
 13
 Given the charges against Long and the nature of the evidence presented at the disciplinary hearings, the committee reports satisfied due process requirements. Moreover, they are sufficient to ensure that the policies behind requiring written findings will not be thwarted. In all the cases, Long was charged with either threatening someone, disobeying an order, or using vulgar and profane language. (R. 7, Exhibits A-F, H.) The evidence against Long consisted of the conduct reports which listed statements that Long made that resulted in the charges against him. The only evidence that Long presented in defense, in the cases in which he did not admit to the charges, were his denials that he said the things that he was accused of saying. Id. As such, the committee's statement in each case that it believed the conduct report to be true as written was constitutionally sufficient. While a more complete discussion might be desirable, Saenz, 811 F.2d at 1174, the committee's statements make it apparent that in each case the CAB believed the officer who wrote the conduct report to be more credible than Long. Because this creates no uncertainty about the CAB's reasoning process, there is no risk that Long will be subject to punishment for acts that he did not commit due to the CAB's failure to examine the issues or spell out the reasons for the punishment it imposed.
 
 
 14
 The order of the district court is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)